## SMITH v. BOUKER, (two cases.)

*(Circuit Court of Appeals, Second Circuit. December 14, 1891.)*

1. BAILMENTS—DUTY OF HIRER OF CHATTEL—AGENTS.
   The hirer of a chattel impliedly undertakes to use it well, to use it for no other purpose than that for which it is hired, to take proper care of it, and to restore it at the time appointed. In all these things he is bound to exercise the diligence of a prudent man; and for any default, whether his own personal fault or negligence or that of his subagents or servants, he is responsible to the owner.

2. SAME—CHARTERED SCOW—LOSS—NEGLIGENCE OF SERVANT.
   Where respondent chartered libelant's scows to transport a building from one place to another, and also engaged a tug to tow the scows, and by the negligence of the master of the tug and his subordinate the scows became a total loss, it was *held* that respondent was liable.
   40 Fed. Rep. 839, affirmed.

In Admiralty. Appeals from decrees of the circuit court of the United States for the southern district of New York, affirming *pro forma* decrees of the district court for said district. The libelants, De Witt C. Bouker and George A. Bouker, were each the owner of one of two scows lost in the same accident. The cases were heard together in the district court, which sustained the libels, (40 Fed. Rep. 839,) and respondent appealed. On this appeal the court delivered its opinion in one suit only, directing the same disposition to be made of the other. Affirmed.

*Moore & Wallace* and *Frank D. Sturges,* for appellant.

*Wing, Shoudy & Putnam,* (*Harrington Putnam,* of counsel,) for appellee.

Before WALLACE and LACOMBE, Circuit Judges.

WALLACE, Circuit Judge. This is an appeal from a decree for the libelant for the value of a scow. Smith chartered the scow of Bouker at an agreed price per day, to be used in transporting a building from one location to another. The transportation necessitated the use of a tug, and Smith engaged Jaycox, with his tug and crew. While the tug was towing the scow, she ran aground, and before she could be got off, and the scow taken to a place of safety, a storm arose, and the scow was so injured as to be practically worthless.

We are satisfied that there is no merit in any of the specific allegations of fault set forth in the libel. It was a suitable time to start upon the trip. The scow was to be taken through a channel from Rockaway inlet, and thence a short distance on the open sea. It was necessary to proceed when there was high water in the channel, and it was high water then. A storm was approaching, and it was probable that if the trip were postponed until high water again the sea would be too rough, perhaps for several days, to permit the scow to be towed safely. Any delay consequent upon the postponement would have been at the expense of the charterer. Jaycox was interested in having such a delay, as he would get pay for his tug in the mean time; and his protests about the

danger of starting at that time were prompted, we think, by this motive. There is as little merit in the other allegations which set forth that the tug was of insufficient capacity to handle the scow, or that the scow should not have been taken through the channel. The accident was caused by the incompetency of Hults, who was familiar with the channel, and was on board the tug for the trip, not to assist in her management, but to give Jaycox the benefit of his knowledge of the channel. He was not experienced in steering a tug and scow sufficiently to be intrusted with that duty in the difficult passage through the channel. Jaycox should have stood by the wheel. Instead of doing so, he deserted it, and asked Hults to take the wheel. Hults did the best he could, but could not control the tug, as she was influenced by the scow, and ran her aground. The case seems to be one in which the libelant in the present action and the libelant in the other action, for the loss of scow No. 5, have affiliated with Jaycox to fix Smith with the damages occasioned by Jaycox's negligence. Notwithstanding the failure to establish the specific allegations of the libel, its general averments are sufficient to authorize a recovery upon the facts as they appear, and the only question is whether Smith is liable for the negligent acts of Jaycox or Hults. It is elementary law that the hirer of a chattel impliedly undertakes to use it well, to use it for no other purpose than that for which it is hired, to take proper care of it, and to restore it at the time appointed. In all these things, he is bound to exercise the diligence of a prudent man; and for any default, whether his own personal fault or negligence or that of his subagents or servants, is responsible to the owner.

There is a class of cases in which one who makes a contract with another to perform a specified undertaking, not reserving to himself any control over the means or instrumentalities to be employed, is not liable for the negligent act of the other in the course of performing the contract, or of the servant of the latter. This case is not of that class. No one can escape from the burden of an obligation which rests primarily upon him by engaging for its performance with the contractor. Whart. Ag. § 485. Smith could not absolve himself from his duty as a bailee by employing Jaycox to perform any part of it. Although Jaycox was towing the scow with his tug by a contract with Smith, he was nevertheless performing Smith's implied contract, as were also all those who were employed for the time being by Jaycox. If, by reason of some negligent act of Jaycox or Hults in the management of the tug, a third person had been injured, who was a stranger to the implied contract between Smith and the libelant for the proper care of the scow, Smith would not have been responsible, if it appeared that he had no control over the service which he had contracted with Jaycox to perform. *Quinn* v. *Construction Co.*, 46 Fed. Rep. 506. The decree of the court below is affirmed, with interest and the costs of this court, and the cause is remitted with instructions to proceed accordingly.